[Civ. No. 4817. Third Appellate District.—March 29, 1933.]

CORNELIA A. HERSHEY et al., Petitioners, v. Roy E. COLE, as County Treasurer, etc., Respondents.

Clark, Nichols & Eltse for Petitioners.

Neal Chalmers, District Attorney, and Percy Napton, Deputy District Attorney, for Respondent.

A. C. Huston, Downey, Brand & Seymour, Devlin, Devlin & Diepenbrock, C. E. McLaughlin, Duard F. Geis and Wright L. Callender, *Amici Curiae* on behalf of Respondent.

PLUMMER, J.—This is an original proceeding based upon a petition filed in this court on the tenth day of October, 1932, wherein the petitioners prayed for a writ of mandate to be directed against Roy E. Cole, as County Treasurer of Yolo County, and as such, Treasurer of Reclamation District No. 1600, commanding him to estimate the amount of money necessary to pay the interest and principal maturing on January 1, 1933, on bonds of Reclamation District No. 1600, secured by what is known as "Assessment No. 1" of said district, in such a manner as not to allow as credits or payments on said assessment, either as principal or interest, of any bonds of said district maturing after January 1, 1933, which may have been surrendered for cancellation or as payment of assessments by any of the

land owners of said district. Based upon this petition, what are the rights of petitioners, and what is their remedy, if any? The respondent appeared only by demurrer.

Reclamation District No. 1600 is entirely within the exterior boundaries of Yolo County, and was created by an act of the legislature in 1913. In 1914 there was regularly levied upon the lands within said district an assessment in the sum of $550,200. Of said assessment there was levied upon lands belonging to the petitioners within said district the sum of $115,109.26.

The record shows that thereafter, and prior to the seventeenth day of November, 1917, approximately fifty per cent of said assessment had been paid by the various land owners of said district, and on said date there remained unpaid the sum of $275,000. After regular proceedings had been taken and had therefor, on December 12, 1917, the unpaid portion of said assessment, in accordance with an election held therefor, bonds were authorized to be issued according to the provisions of section 3480 of the Political Code, and on January 1, 1918, said district issued and sold bonds, secured by said assessment, in the amount of $275,000, bearing interest at the rate of six per cent per annum, interest payable semi-annually on January 1st and July 1st of each year. The bonds issued by said district were made payable in ten equal installments as to principal, to wit, in the sum of $27,500, payable annually beginning with the first day of January, 1928, and on the first day of January each year thereafter for ten succeeding years. The bonds and interest secured by the assessment herein referred to, payable by calls issued against said assessment by the County Treasurer of Yolo County. The bonds recite that they are based upon and secured by the assessment levied upon the lands of said district.

At the time of the issuance of the bonds of said district there was no provision of the law whereby any land owner could pay in full the remaining portion of the assessment chargeable against his lands which remained unpaid at the date of the issuance of the bonds, other than by way of payment of the installments as they might be called for from time to time by the County Treasurer to meet the interest and principal falling due as specified in the bonds. Thereafter, by an act of the legislature (Stats. 1923, p. 598),

section 3480 of the Political Code was amended, so far as this proceeding is concerned, by inserting therein the following paragraph: "Any land owner of the district who shall desire at any time to lessen or remove the lien upon his land, of any assessment on which bonds have been, or hereafter may be issued, may deliver to the County Treasurer for cancellation any bonds payable out of said assessment, and the Treasurer shall credit against the assessment on his lands the principal and accrued interest of said bonds."

It is further set forth in the petition that in pursuance of this amendment to section 3480, *supra*, the Treasurer of Yolo County has received and credited upon assessment No. 1 of said district, bonds of the face value of approximately $26,000, bonds so received, canceled and credited upon the assessment of different land owners being bonds maturing later than January 1, 1933; that except for six months' interest on bonds so received, the amount that it is necessary for the County Treasurer to call upon said assessment to meet principal and interest, the bonds due January 1, 1933, is the same as if said bonds had not been so received, canceled and credited as payment of the assessment charged against land owners presenting late maturing bonds for cancellation; that as a result of the receiving and canceling of late maturing bonds, the amount of the call will be spread over fewer tracts of land and increased upon the lands still subject to assessment proportionately to the amount otherwise chargeable against the lands so relieved from the assessment; that in following this method of assessment, the petitioners will have imposed upon their lands and made subject to call of an additional sum of about $2,000, which would not be the case had late maturing bonds not been received, canceled and assessments marked "paid" under the provisions of the amendment made to section 3480, *supra*, in 1923.

The contention made by the petitioners is that the law as it stood at the time of the election authorizing the issuance of bonds, and the issuance of bonds, is controlling so far as the calling of installment payments are concerned, and that upon the voting of the bonds, the issuance of the bonds and the sale thereof, a contract was entered into between the land owners and the purchasers of the bonds whereby the land owners were given the contractual right

to discharge the assessment upon their lands in ten equal annual payments as to the principal, and semi-annual interest payments beginning on the first day of January, 1928, and yearly thereafter for the full period of ten years, and that the amendment which we have set forth made to section 3480, *supra*, in 1923, cannot be given any retroactive effect so as to increase the annual installments which the respective land owners may be required to pay.

Respondent's contention in support of the applicability of the amendment to section 3480, *supra*, to prior issue of bonds, is based upon the following excerpt found in section 13 of article XI of the state Constitution, to wit: "except that the legislature shall have power to provide for the supervision, regulation and conduct in such manner as it may determine, of the affairs of Irrigation Districts, Reclamation Districts, or Drainage Districts organized or existing under any law of this State"; and that no contract between the land owners or bondholders and the state existed. The plenary powers given to the legislature by the quoted portion of section 13 of article XI of the Constitution, *supra*, must be read, however, in connection with section 16 of article I of the Constitution and section 10 of article I of the United States Constitution prohibiting impairing of the obligation of contracts. The supervision, the regulation and the controlling of the conduct of the affairs of irrigation, reclamation and drainage districts is plenary as to all governmental affairs, including procedure and administration, limited only where it tends to impair the obligation of a contract or to increase the obligation of a contract. In other words, the plenary power does not extend to and include the right of the legislature to trench upon private rights arising out of or based upon contracts.

The premises laid down by the respondent that there is no contract between the land owners of Reclamation District No. 1600 and the state, and also that there is no contract between the purchasers of the bonds issued by said district and the state, we think absolutely correct, but the conclusions drawn therefrom that there is no contract or *quasi* contract in legal effect between the land owners of the district and the purchasers of bonds of the district does not appear to be supported either in principle or by the authorities.

That reclamation assessments on the faith of which bonds are issued and sold, are to be held intact as a basis for the security and payment of the bonds as they fall due, appears to be evidenced by the respective acts of the legislature up to and until the amendment to section 3480, *supra,* in 1923, as no provision was made for the premature discharge of assessments after the issuance of bonds. Even the presentation for cancellation or payment of assessments by warrants of the district was not allowed in discharge of assessments. Section 3457 of the Political Code, as it read in 1911, contained the following: "Any owner of land in the District may at any time pay any assessment thereon (excepting an assessment upon which bonds have been issued), or any part thereof, with warrants of the District." This provision was in force at the time of the organization of Reclamation District No. 1600.

The intent of the law, as we construe it, has been and was, prior to the challenged amendment, to give the entire unpaid assessment as security, to which each and every bondholder might look for payment. This presents the important question: Does there exist in legal effect a contract between the owners of lands upon which an assessment has been levied, and the holders of bonds purchased upon the faith of the security afforded by the unpaid portion of the assessment at the date of the issuance of the bonds?

In *Rorick et al.* v. *Board of Commissioners of Everglades Drainage District et al.,* 57 Fed. (2d) 1048, tried before Circuit Judge Bryan, and District Judges Sheppard and Strum, a case involving the rights of bondholders of a drainage district, the law is laid down as follows: "Legislation by authority of which bonds are issued, and their payment provided for, becomes a constituent part of the contract with the bondholders. Such a contract is within the protection of the Constitution, article I, section 10. The obligation of the bond contract, of which such legislation is a part, cannot be impaired, nor its fulfillment hampered or obstructed by subsequent legislation to the prejudice of the vested rights of bondholders. This rule has reference to subsequent legislation which affects the contract directly, and not incidentally, or only by consequence. (Citing a number of cases.) 'A different result would leave nothing of the contract, but an abstract right—of no practical value

—and render the protection of the Constitution a shadow and a delusion.' . . . An impairment occurs when the value of the contract has been diminished by subsequent legislation. The question of impairment is not one of degree, but of encroaching in any respect upon the obligation—dispensing with any part of its force. (Citing a number of cases.) Though the state cannot by contract surrender its sovereign prerogatives in the performance of essential governmental duties (citing authorities), nevertheless, when the state authorizes a taxing subdivision to contract by issuing bonds and to exercise the power of local taxation to the extent necessary to meet such obligations, the power thus given cannot be withdrawn so long as its exercise is necessary to satisfy the vested rights of bondholders. In such cases, the state and the subordinate taxing unit are equally bound. 'The power given becomes a trust which the donor cannot annul, and which the donee is bound to execute.' (Citing a number of authorities.) . . . '' After considering other questions not material here, the court went on to say: ''We hold, therefore, that the provisions of Chapter 6456, Acts 1913, and its several amendments pursuant to which plaintiffs' bonds were issued, and acreage taxes to pay the same were levied, constitute a contract between plaintiffs and the district; that the legislation imposing acreage taxes to pay those bonds and interest, which was in effect when the bonds were issued, cannot be withdrawn, nor can the proceeds of such taxes be diverted to other purposes, so long as such proceeds are necessary to pay interest and create a sinking fund as prescribed by section 24 of the Act.''

Changes in the law relative to the sale of delinquent lands are likewise held inoperative as to contracts made prior to the changes, the changes being held violative of section 10 of article I of the United States Constitution. In the case of *St. Louis Union Trust Co.* v. *Franklin American Trust Co.*, 52 Fed. (2d) 431, it is held that bonds issued as a first lien upon lands of a drainage district cannot be impaired by a later enactment which purports to give to a second issue of bonds a lien of the same standing. A writ of *certiorari* was granted in this case to the United States Supreme Court and subsequently dismissed, thus affirming the decision of the trial court. (Advance sheets Supreme Court Reporter, vol. 52, No. 15, page 642.) Every statement of the law in

the two cases just cited is supported by numerous authorities, so many, indeed, that we can only make reference thereto.

In *Re Cranberry Creek Drainage Dist.*, 202 Wis. 64 [231 N. W. 588], the Supreme Court of Wisconsin had before it a change in the law relative to the surrendering of bonds by land owners in a drainage district, and, among other things, held that the bond constituted a contract, and that an act of the legislature which purported to give holders of bond-owning land a right which was not extended to bond-holders not owning land in the district, violative of the state Constitution relating to contracts, and also violative of section 10 of article I of the United States Constitution. It was there further stated that "an act which in any degree, no matter how slight, modifies the obligation of a contract by attempting to relieve one party from any duty assumed thereby, is repugnant to constitutional prohibitions".

In *Palo Verde Irr. Dist.* v. *Seeley,* 198 Cal. 477 [245 Pac. 1092], the Supreme Court, without discussion, assumed the bonds of an irrigation district constituted a contract, and then considered whether the challenged act effected a violation thereof, and held as follows: "The obligation of the contract entered into by the taxpayers of the Palo Verde Joint Levee District, at the time of the issuance of the Levee District bonds, will not be impaired by the issuance of refunding bonds by the Palo Verde Irrigation District for the purpose of paying former bonds, by reason of the fact that the personal property within the Levee District will be released from the obligation to pay taxes for the payment of the Levee District bonds." The court went on to hold that lands which were not in the old district, but were included in the new, and having received benefits, should have imposed upon them burdens commensurate therewith. The opinion also holds that if there was in fact a change in the contract, the property owners had consented thereto, using the following language: "It may also be said, we think, that the property owners within the area not originally included in the Levee District, by electing to become a part of the Irrigation District, consented to become subjected to the obligations authorized to be imposed by the provisions of the Irrigation District Act for the issuance of the refunding bonds. . . . The question of whether the new district should be organized was submitted to a vote of the property

owners of the district, and carried. Moreover, it will be remembered that the proposal to issue the bonds was carried by an overwhelming vote at the special election called for that purpose. It may be that the owners of property in the added territory voted in the negative, but their properties formed a component part of the new district, and the voice of the majority under the provisions of the statute under which they had elected to become a part of the new district was binding upon them.'' The court then went on to distinguish the questions involved in the Palo Verde Irrigation District from those involved in *Reclamation Dist. No. 70* v. *Birks,* 159 Cal. 233 [113 Pac. 170], where the question of an attempt to impose additional burdens was considered. No mention is made in the Palo Verde Irrigation District of the opinion in the case of *La Mesa Lemon Grove etc. Irr. Dist.* v. *Halley,* 197 Cal. 50 [239 Pac. 719], in which case the holding of the court in *Merchants Nat. Bank of San Diego* v. *Escondido Irr. Dist.,* 144 Cal. 329 [77 Pac. 937], was distinguished. The La Mesa case does hold, in substance, that there is no contract between the land owner and the state, but a careful reading of the opinion in the La Mesa case shows that the court did not limit in any degree the principle enunciated in former decisions that a contract in legal effect existed between the property owner and the bondholder. After quoting from the case of *Wisconsin & M. R. Co.* v. *Powers,* 191 U. S. 379 [24 Sup. Ct. 107, 48 L. Ed. 227], where the court was considering procedure and regulatory matters, it is stated that the legislature did not address the land owners, and therefore made no promises to them, and consequently no contract could arise between the land owner and the state. The opinion in the La Mesa case does carefully distinguish and point out as to when a contract does exist. We quote from the opinion the following: ''The formation of Irrigation Districts is accomplished by proceedings so closely analogous to those prescribed for the formation of swamp land irrigation districts that the decisions with respect to the latter are authority as to the former. The close similarity between those public or state agencies which are denominated irrigation districts and those other and to a larger degree similarly empowered and conducted public or state agencies which are denominated municipal corporations being thus established and

declared, the general principles which are applicable to the one should also be susceptible of application to the other; and these general principles in so far as they have relation to the legislative control over the organization, management, control, and manner and method of creating and of liquidating their obligations have so frequently been expounded as to render any extended comment upon the many cases defining and applying the same unnecessary in relation to the instant case. These general principles have been thus broadly and tersely stated in 6 Ruling Case Law, at section 337 thereof, under the title 'constitutional law', as follows: 'In determining whether a statute affecting a municipal corporation operates as an impairment of the obligation of a contract, regard must be had to the distinction between the rights of such a corporation in its public or governmental capacity and its private rights. So far as a municipality is an agency of government, it has no rights or powers which, as between it and the state, the legislature may not modify or abrogate at pleasure. Neither the charter of a municipal corporation, nor any legislative act regulating the use of property held by it for governmental or public purposes, is a contract within the meaning of the federal Constitution.' "

A close reading of the opinion in the La Mesa case discloses that the court very carefully distinguished between contractual rights and governmental powers of supervision, regulation and conduct of irrigation and reclamation districts, drawing the line just as we have heretofore set forth where the constitutional provisions limit encroachment upon contracts. No question of the violation of a contract between a property owner and a bondholder was involved in the case of *Spurrier* v. *Neumiller,* 37 Cal. App. 683 [174 Pac. 338]. Following the decision in the case of *Reclamation Dist. No. 17* v. *Bonbini,* 158 Cal. 197 [110 Pac. 577], a reassessment was made in which credit was allowed *pro tanto* for the amount which had been paid by the prior owner of the lands subsequently acquired by Mr. Spurrier. The court held that the legislature, in amending section 3466½ of the Political Code changing the policy of levying assessments in reclamation districts, did not thereby deprive any land owner of any contractual right, and that the application of such amended section was not violative of

section 10 of article I of the federal Constitution, nor of section 16, article I, of the state Constitution. The court did not hold, nor was it held at any stage in that case, that where bonds are issued, a contractual relation is not created between the land owner and the bond purchaser.

As stated in the opinion in the La Mesa case, *supra*, the close similarity between public or state agencies and public or state agencies denominated municipal corporations, is so close that the general principles relating to the one are applicable to the other. This being true, the decisions declaring the status between property owners and bondholders must be considered as controlling here.

In *Chapman* v. *Jocelyn*, 182 Cal. 294 [187 Pac. 962], the Supreme Court squarely decides that a street improvement bond issued upon an assessment by reason of failure of the owner to pay the same within the time prescribed constitutes a contract, and that the law in force at the time becomes a part thereof. This clearly appears from the excerpt which we take from the opinion, to wit: "The case must be determined upon the provisions of the Bond Act as it existed in 1912 when the bond was issued. The act then in force was enacted in 1899. (Stats. 1899, p. 40.) The amendments of the act in 1913 made some material changes in the requirements concerning a sale. (Stats. 1913, p. 849.) A street assessment is a contract and the provisions of the statute in force at the time prescribing the manner of its enforcement are a part of such contract. (*Creighton* v. *Pragg*, 21 Cal. 115; *Houston* v. *McKenna*, 22 Cal. 553.) The bond issued upon such assessment, by reason of the failure of the owner to pay the same within the thirty days allowed to the contractor for the work to collect the same, must, therefore, also constitute a contract. In effect, the bond creates a power of sale whereby the contractor may enforce the lien of the assessment against the property described in the bond. The city treasurer is thereby made a special agent of the parties concerned, with authority to execute the power according to its terms, as found in the statute under which the bond is issued. The Constitution forbids the passage of a law impairing the obligation of a contract. (Art. I, sec. 16.) "

In *Security Trust & Savings Bank* v. *City of Los Angeles*, 120 Cal. App. 518 [7 Pac. (2d) 1061], this court had before

it the relationship existing between property owners and bondholders of an improvement district organized under the provisions of the act of 1915 (Stats. 1915, p. 99), where the property owners had voted to create a district and to issue bonds. We there said: "The bonds constitute a contract between the bondholder and the taxpayers of the district. Among other things, the contract, (bond) contains the provision that 'the principal and interest of this bond are payable exclusively out of taxes levied upon. the taxable property in said Municipal Improvement District No. 27', and to substitute any other method for the payment of the bond would be to change the express terms of the contract, which is not permissible. (*Merchants National Bank of San Diego* v. *Escondido Irr. Dist.*, 144 Cal. 329 [77 Pac. 937]; *Jeffreys* v. *Point Richmond Canal & Land Co.*, 202 Cal. 290 [260 Pac. 548]; *H. Crummey, Inc.*, v. *Howe*, 48 Cal. App. 542 [192 Pac. 112]; *McBean* v. *San Bernardino*, 96 Cal. 183 [31 Pac. 49]."

In the recent case of *San Diego County* v. *Childs*, 85 Cal. 12 [17 Pac. (2d) 734], the Supreme Court had before it the questions which we are here considering, and there said (we quote from the syllabus): "When valid proceedings for improvements by special assessments have been completed, and bonds have been issued to represent assessments, contractual relations between property owner and bondholders exist within constitutional provisions prohibiting laws impairing obligations of contracts." The court in the Childs case cites with approval the holding of this court in the Security Trust & Savings Bank case, *supra*, besides citing a number of other cases supporting the same doctrine.

In *Mulcahy et al.* v. *Baldwin*, 216 Cal. 517 [15 Pac. (2d) 738], the court had before it the question of whether the provision for issuing refunding bonds constituted a violation of the contract in relation to a prior. issue of bonds. The court took up and considered the plenary power of the legislature referring to the opinion in the Palo Verde Irrigation District, *supra*, but there is nothing in the opinion which limits the former declarations of the court that a contractual relation exists between the property owner and the bondholder. It was pointed out that the bondholders were given the election of surrendering their old bonds and accepting refunding bonds in lieu thereof.

Attention is also called to the fact that the land owners in the district, at an election, had consented to the issuance of the refunding bonds in exchange for the old issues. The existence of the contract, though not stated in so many words, is irresistibly inferred from the language used. (We quote from the syllabus, epitomizing the language of the court) : "A statute authorizing irrigation districts to issue refunding bonds on a vote of a majority of the electors, held not to impair contract rights of land owners." And further: "That there can be no impairment of a contract by a change thereof effected without the consent of the contracting parties."

We find nothing in the case of *El Dorado Irr. Dist.* v. *Browne,* 216 Cal. 269 [13 Pac. (2d) 921], modifying or changing in any way the relationship existing between property owners in a reclamation district and purchasers of bonds. The court in its opinion in the El Dorado Irr. Dist. case, *supra,* does state that there is no constitutional right of residents of an irrigation district to vote upon bond issues (citing *In re Bonds of San Joaquin Irr. Dist.,* 161 Cal. 345 [119 Pac. 198] ; *Los Angeles County Flood Control Dist.* v. *Hamilton,* 177 Cal. 119 [169 Pac. 1028]). The court does not hold, however, that when the bonds have been issued, a contractual relationship would not exist. The real point decided in the El Dorado Irrigation District case supra is that the plans were sufficiently broad to warrant the change in the work proposed to be made by the trustees thereof.

It also appears to be well settled that the law in force under which bonds are issued, enters into and becomes a part of the contract. This is clearly set forth in the well-considered case of *Oklahoma Cotton Growers Assn.* v. *Salyer,* 114 Okl. 77 [243 Pac. 232]. We quote therefrom as follows: "The existing statutes and the settled law of the land at the time a contract is made become a part of it, and must be read into it. All contracts are therefore to be construed in the light of the rules and principles of law applicable to the subject matter of the transaction, and those rules and principles control the rights of the parties, except where the contract discloses an intention to depart therefrom. However, from the fact that every contract, not expressly providing to the contrary, is presumed to have been made with reference to the then existing state of the law, it

follows that if a subsequent change is made therein which in any degree affects such contract, such change is presumed to be excepted therefrom. (6 R. C. L., p. 855; 13 C. J., p. 247); *Deweese* v. *Smith*, 106 Fed. 438 [45 C. C. A. 408, 66 L. R. A. 971]; cases in note to *Union Central Ins. Co.* v. *Pollard*, 36 L. R. A. 271. The laws upon the subject of a contract are read into and become a part thereof to the same extent as though they were written into its terms. (*Armour Packing Co.* v. *United States*, 153 Fed. 1 [82 C. C. A. 135, 14 L. R. A. (N. S.) 400].)''

To the same effect is the case of *Runnells* v. *Oklahoma City*, 150 Okl. 292 [1 Pac. (2d) 740]. It is there held that existing laws under which street improvement bonds are issued become a part of the contract, so that obligations thereof cannot be impaired by subsequent changes in the law.

In the case of *Colby* v. *City of Medford*, 84 Or. 485 [167 Pac. 487], the Supreme Court of Oregon had before it the same questions which we are here considering, and in an elaborate and exhaustive opinion held that the law at the time a contract is entered into becomes a part of it, using the following language: ''The established rule is that every contract embraces and includes all those laws which exist at the time and place where the contract is executed.'' And further, in holding that a contract could not be changed without consent, though beneficial to one obligated thereunder, held that a city ''by amendment to its charter cannot change the terms of the contract without the consent of the owner. The Hanson plan attempts to change the contract made between the city and owner by changing the number and amount of the unpaid installments, extending the time over a period of 13 years. The right of the city to change the very substance of its contract does not depend upon whether the change is advantageous to the owner, but it is dependent upon the consent of the owner; and hence it is beside the mark to say that the change is for the benefit of the owner.'' It is further held in that case that ''if the duty to perform is lessened and either party is deprived of the benefit of his contract, the obligation of the contract is impaired. The obligation of a contract is impaired by the repeal of the law which constitutes a contract, or by a

statute which alters the terms of a contract by impoisng a new condition, or which adds new duties.''

By appearing only by demurrer it is confessed that a new burden is immediately cast upon the petitioners to the extent of about $2,000. Were it not admitted, a mathematical calculation would establish the same fact. This case disposes of the respondent's contention that the petitioners will be remotely benefited by a lessened interest charge, even though the ten-year period within which their part of the obligation calls for the payment of installments may be lessened.

That the law in existence at the time that bonds are issued becomes a part of the contract and cannot thereafter be changed without violating the constitutional prohibitions is held in the case of *Nelson* v. *Pitts, Treasurer of Muskogee County*, 126 Okl. 191 [259 Pac. 533, 53 A. L. R. 1137]. A somewhat similar principle is involved by an act which purports to extend the time before a deed can be secured by a purchaser under a tax sale. The authorities are numerous to the effect that such an act cannot be given retroactive effect. (See *Rott* v. *Steffens, as City Controller, etc.*, 229 Mich. 241 [201 N. W. 227, 38 A. L. R. 224].)

In *Peery* v. *City of Los Angeles*, 187 Cal. 753 [203 Pac. 992, 19 A. L. R. 1044], the court held that where an attempt was made to allow bonds to be sold for less than par, where the voters had approved the issue, conditioned upon the bonds being sold for not less than par, constituted a violation of the contract within the terms of section 16 of article I of the state Constitution.

In *Jeffreys* v. *Point Richmond Canal & Land Co.*, 202 Cal. 290 [260 Pac. 548], the Supreme Court reaffirmed the decision of *Chapman* v. *Jocelyn, supra,* and again held that a street assessment is a contract and that the provisions of the statute in force at the time prescribing the manner of its enforcement, are a part of the contract. The decision of the court is well summarized in the second paragraph of the syllabus, to wit: ''The rights of property owners against whose property assessments were levied and bonds issued under the Improvement Act of 1911, prior to the amendment of 1921, become vested under a statute which did not render them subject to any statute whatever in any court at the hands of the bondholders; and while the legislature had

power to make retroactive a law relating purely to a remedy, it could not alter the substantive rights of the property owners, or their successors in interest.'' It is further held that while the law aimed only at providing a remedy, it in fact changed substantive rights and could not be held to apply to bonds previously issued. Likewise, it is held that a change in the law limiting the amount of assessment installments that may be called after the assessment has been levied is not retroactive and cannot be allowed to apply where the rights and obligations have already been established. (*H. Crummey, Inc.,* v. *Howe,* 48 Cal. App. 542 [192 Pac. 112].)

In line with the cases just cited it is held ''that where a contract has been entered into with a municipal corporation on the faith that taxes will be levied, etc., legislation repealing or modifying the taxing power so as to deprive the holder of the contract of all adequate and efficacious remedy is within the constitutional inhibition as an impairment of an obligation of contracts''. (6 R. C. L. 345.)

By the provisions of section 3463 of the Political Code the assessment levied upon any tract of land within a reclamation district constitutes a lien thereon, and a like lien was extended to the bondholders under the provisions of section 3480 of the Political Code as it read at the time of the issuance of the bonds involved in this action. (Stats. 1917, p. 1181.) The lien there provided for is to continue and inure to the benefit of the bonds which have been issued to any reclamation district until the bonds are fully paid. It is further provided in the section as it then read that where bonds of the district have been authorized to be issued on assessments, all unpaid assessments shall bear interest at the rate of seven per cent per annum until all of the bonds shall have been fully paid and discharged.

As evidencing the intent of the leigslature to avoid any impairment of the contract existing between the land owner and the bondholder, the section further referred to provides that upon the sale of any land on account of the nonpayment of any installment, payment may be made not only in cash but in bonds or coupons which have already matured. This provision avoids the acceleration of any installment payment, and likewise avoids the increase of any installment payment during the lifetime of unmatured bonds.

The form of the bond to be issued, set forth in the section of the code, *supra,* recites that it is based upon and secured by an assessment levied on the lands in said district, etc.

The respondent's contention that the assessment is the primary obligation, and that the issuance of bonds is only an extension of credit, does not militate against the fact that when the bonds are issued, a contract exists between the holder of land in the reclamation district where the assessment has been levied, and the purchaser of the bonds, based thereon. As we have seen, the lien of the assessment continues and the lien of the bond, based upon the assessment, continues until fully paid and discharged.

The contention of the petitioners is to the effect that when a land owner goes to the polls and votes for the issuance of bonds providing that they shall be payable in ten annual payments, beginning with the first principal payment ten years after date, that he agrees on his part to make those ten annual payments as well as the interest payments which are provided to be made semi-annually, and that the assessment shall stand as security for the payment of the bonds. The land owner's part of the agreement is that by virtue of the issuance of bonds he obligates himself to pay the assessment in ten equal annual payments, with such additional percentage as may be necessary to cover delinquencies; that his part of the obligation is thereby fixed, and that it can neither be limited nor increased during the lifetime of the bonds for the issuance of which he has voted. On the other hand, that the purchaser of the bonds, based upon the assessment, accepts the bond based upon the premises which we have stated, and his right is to have collected from each land owner the annual percentage of the assessment as specified in the bond—no more and no less. In other words, that the bondholder can call for the payment of only ten per cent, in this case as specified to be paid by the petitioners in this proceeding.

As we have seen by the cases cited, the rights and obligations of the bondholder are based upon the law as it stood at the time of the issuance of the bonds, and cannot be changed so as to alter the obligations specified in the bond. It necessarily follows that the rights and obligations of the property owner are reciprocal. His obligations cannot be increased nor lessened. The portion of the assessment, or

rather, the amount of the installment that is to be paid by the land owner at each annual period is fixed when the contract is completed, by the sale of the bonds. We find no negative answer to this contention of the appellants.

At the date of the issuance of the bonds of Reclamation District No. 1600, there was unpaid on the assessment levied upon the lands belonging to the petitioners herein, situate in said district, the sum of $115,109.26. Their obligation was to pay that sum, together with interest, in ten annual payments, augmented only by such percentage as might be necessary to cover delinquencies. If late maturing bonds may, under the amendment to section 3480 of the Political Code made in 1923, by giving it a retrospective effect, be so presented by certain land owners, and accepted by the respondent, as to augment any of the ten annual installments agreed to be paid at the time the bonds were issued, then and in that case late maturing bonds might be so presented and canceled as to give the petitioners a number of years less than the ten years specified in the contract within which to meet their obligations.

The contention of the petitioners that time within which to meet their obligations is a vested right appears to us to be well taken.

 Based upon the foregoing, is the remedy by *mandamus* applicable in that case?

As heretofore stated, the petition was filed in this proceeding on the tenth day of October, 1932. One of the annual installments of principal fell due on the first day of January, 1933, together with the semi-annual interest provided for in the bonds. Section 3480, *supra,* requires that at least ninety days before any interest date of the bonds, including refunding bonds, etc., the treasurer shall estimate the amount of money necessary to pay interest and principal maturing on such interest date, etc., and thereupon cause to be published in some newspaper of general circulation, in the county in which the district may be situated, the notice setting forth that an installment of assessment (describing it, giving the percentage), is payable within thirty days from date by all assessed land owners of the district, etc. It further provides that all or any part of said installment which shall remain unpaid on the day fixed will become delinquent. The section then sets forth the

procedure to be followed by the treasurer in making collections of the assessment on lands where the assessment has been allowed to go delinquent, and upon sale thereof may accept in payment, cash or bonds and coupons already matured. The accepting of maturing bonds and coupons necessarily lessens the money requirements to make payment upon the bonds and coupons due on the named interest date. Such a notice cannot now be given. Such a notice could not be given, according to the specified time, on the date of · the filing of the petition for a writ of mandate herein.

Again, the assessments upon the respective parcels of land were fixed and determined long prior to the issuance of bonds. A remedy existed at that time involving the question of whether the assessment was so adjusted as to equalize the burden, and require each land owner to pay according to the benefits received by the proposed improvements for which the assessment was levied. Further than that, no land owner has any interest in the assessment levied upon the lands in the district owned by any other person. Each land owner's obligation is distinctly set forth.

As we have seen herein, the petitioners are obligated to pay only ten per cent annually of the remaining portion of the assessment remaining unpaid upon their lands at the date of the issuance of the bonds. That fixes both their right and their duty. Whether any other land owner pays is not material. If the bondholders win here contesting the installment call, then in that case a different issue would be presented.

In the case of *Rohwer* v. *Gibson,* 126 Cal. App. 707 [14 Pac. (2d) 1051], we had occasion to examine the law relative to assessments according to benefits, and there cited cases showing that additional assessments cannot be levied so as to increase the amount thereof to a sum in excess of the value of the benefits conferred. Ordinarily, *mandamus* will not issue when the rights of individuals or corporations who have a special interest in the subject matter, and whose rights will be collaterally determined by a judgment awarding the writ, unless they are made parties to the action. (38 C. J. 853; *California Cotton Credit Corp.* v. *Superior Court of Madera County,* 122 Cal. App. 404 [10 Pac. (2d) 176].) Usually a writ of mandate will not issue to compel the performance of an official act if, when the writ is ap-

plied for, the time limited for action has expired. (*Conn* v. *City Council*, 17 Cal. App. 705 [121 Pac. 714].) This rule, however, we think would not apply here if other conditions did not prevent the issuance of the writ.

We think the principle enunciated in the case of *Samish Gun Club* v. *Skagit County et al.*, 118 Wash. 578 [204 Pac. 181], is applicable here, and defines the procedure and remedy open to the petitioners. It is there said: "It is well settled in this state as said in *Weyerhaeuser Timber Co.* v. *Pierce County*, 97 Wash. 534 [167 Pac. 35], that where the assessing officers in making an assessment, proceeded upon a fundamentally erroneous theory in making the assessment, courts will grant relief against overvaluation of real property, and this regardless of the action of the Board of Equalization in the premises."

The appellant, before bringing that action, tendered to the county treasurer the full amount of the taxes which it claimed was due upon the property, and its tender was based upon the value of the property as it was assessed for the year 1915, etc. In other words, upon a tender of the amount due, to wit, the amount of the installment which can be, or could have been legally called by the Treasurer of Yolo County to be paid on the assessment against the lands owned by the petitioners within the district, a court of equity will restrain the collection of any additional sum. (See, also, 61 C. J., pp. 1077–1085, incl.) The statutes afford no remedy against an excessive call by allowing payment under protest and recovery of the excess. This warrants the interposition of a court of equity. (See, also, 9 Cal. Jur. 910.) A like rule and procedure was followed in *Pacific Postal etc. Cable Co.* v. *Dalton*, 119 Cal. 604 [51 Pac. 1072]. That case involved a grossly excessive assessment, and also the question that the valuation was fraudulently increased. We perceive no difference in principle between that case and instances where an assessment has been levied upon a fundamentally false basis, or an installment called on an assessment calculated on a false basis. The excessive amount in both instances is illegal, and the collecting officer has no right to demand payment of the illegal portion of either the installment or the assessment.

So far as the petition is concerned, we are not advised as to whether the Treasurer of Yolo County has made any

call for installment payments against the petitioners, or other land owners within Reclamation District No. 1600, and if a call has been made upon an erroneous or false basis, and shown to be such by applying the principles set forth herein, then and in that case the plaintiffs have a remedy for the enforcement of their rights.

The respondent urges acquiescence in the constitutionality or rather retroactive effect of the amendment to section 3480, *supra,* as made by the legislature in 1923, but there is nothing before the court showing any merit in such contention.

The authorities which we have cited show clearly that the law as it exists at the date of the holding therefor, and the issuance of bonds, enters into the contract. This answers all questions as to the constitutionality of the amendment, as applied to bonds issued subsequently to the amendment. All of the conditions contained in the section are read into the contract, whether those conditions be favorable or unfavorable.

As a guide to subsequent proceedings which may be had herein, and which may be had in relation to the bonds of said district, we have endeavored to answer every question presented, even though some of the answers may not be necessarily involved in the determination of this cause.

By reason of the existence of what we consider to be an appropriate remedy, other than the proceeding herein, the writ is denied.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 28, 1933, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 25, 1933.