242 P.2d 865

WIGGS v. CITY OF ALBUQUERQUE et al.

No. 5441.

Supreme Court of New Mexico.

Jan. 19, 1952.

As Corrected on Denial of Rehearing
April 4, 1952.

O'Sullivan & Dunleavy, Albuquerque, for appellant.

C. Vance Mauney, City Atty., Thomas G. Cornish, Asst. City Atty., Albuquerque, and Don Wilson, pro se, all of Albuquerque, for appellees.

COMPTON, Justice.

This controversy involves a proposal to construct a municipal auditorium in the City of Albuquerque.

In April, 1946, appellees submitted to the qualified electors of the city the proposition whether the municipality should issue its general obligation bonds in amount of $500,000 for the acquisition of a site for

a civic auditorium, including cost of construction, equipment, etc. The proposition was duly adopted, whereupon negotiable bonds in said amount were issued.

Appellees thereafter decided that the amount raised was insufficient and submitted a second proposition to the qualified electors of the city, whether additional general obligation bonds in amount of $115,000 should be issued. The second proposition was also adopted and the city issued its bonds accordingly.

It was then found that the funds were still insufficient to construct the required auditorium. To augment the funds thus raised appellees, under the provisions of an Act of Congress of June 9, 1906, 34 Stat. 227, as amended by Public Law 695, Chapter 717, approved August 16, 1950, 64 Stat. 448, sold certain of its real estate realizing therefor the sum of $249,050. The Act contains the following limitation, as amended: " * * * Provided, however, That all the proceeds derived from such sale or sales shall be used for the construction of a public auditorium, erected either under the sole sponsorship of the city of Albuquerque or, if located upon land owned by the University of New Mexico, as a joint project with that university."

Meanwhile, cost of construction continued to spiral. It became evident to all that the amount raised was still inadequate, even for the bare construction of the audi-

torium. It was at this stage, the city and the University of New Mexico undertook the proposition jointly. A contract for its construction, financing, maintenance, etc., was entered into, which reads:

"1. The University hereby lets and leases to the City, for the period of Ninety-nine (99) years, from and after this date, and for such period of extension thereafter as hereinafter mentioned, that triangular tract of land in the City of Albuquerque, where Las Lomas Road and Campus Boulevard intersect, being bounded on the North by Las Lomas Road, on the South by Campus Boulevard, and upon the East by a line, all as shown upon a map or plat thereto hereunto annexed and made a part hereof, and the rental for the full period of this lease shall be deemed to have been fully paid.

"2. The City agrees that it shall and will, at its own cost and expense, proceed with all diligence to construct and complete, upon the said land, a municipal auditorium, according to plans and specifications prepared and to be prepared by Gordon Ferguson, architect, by and with the advice and approval of John Gaw Meem and Associates, architects for the University, and said municipal auditorium shall be of a theater-type, with sloping floor, fixed seats and adequate stage, and shall be designed and built to seat as many persons as the funds of the City, applicable to the construction of said auditorium, may permit;

and the said auditorium shall, when built and completed, throughout the term of this lease, be under the control and in the care and custody of the City, acting by and through an "Auditorium Board", to be appointed by the City, in the manner hereinafter set forth.

"3. When the auditorium is constructed and completed, the University agrees that it will, at its own expense, fill and grade the site around the same to street level, and, in addition, the University shall and will, at its own cost and expense, prepare and maintain, upon its property across Campus Boulevard to the South of the auditorium, parking space for not less than One Thousand (1,000) cars, but the University shall not be expected to pay any part of the cost of an underpass, or other facilities, for reaching the auditorium entrances, all of which shall be a part of the City's expense. The City shall install at least one cross-walk, not less than one hundred feet wide, from the parking area to the auditorium, and shall furnish and operate an efficient automatic control system, and maintain the same for the protection of pedestrians, and by and through the use of such traffic control system shall regulate vehicular traffic across the cross-walk while the auditorium is in use.

"4. The City shall keep and maintain the auditorium in good order and repair, at its own cost and expense, including seats, furnishing, stage appliances, fixtures and all other accessories of the building, and shall furnish janitor and custodian service, and insurance against fire, windstorm and other casualty; Provided, however, that the University agrees, during the term of this lease, to furnish, at its expense, one full-time janitor, to serve under the direction of the Auditorium Board appointed by the City; and the University will also furnish all electricity for light and power and all gas necessary for heating and other use about the auditorium premises.

"5. The Construction, completion and the furnishing, use, operation and maintenance of the auditorium shall be under the exclusive care, jurisdiction and authority of an Auditorium Board of five persons, to be appointed by the governing body of the City, pursuant to such ordinance or law as the City may indicate, and for such terms as may be therein provided.

"6. The Auditorium Board shall have the right and authority to name and appoint a superintendent or manager to handle and manage the auditorium, and such other necessary agents, servants and employees as it shall deem proper, and to provide by all necessary rules, regulations and orders, for the use by the public, including the students and faculty of the University of New Mexico, of the auditorium and its facilities. When the auditorium is used by the University of New Mexico, or by any committee of its Regents or faculty, or for any University purpose,

there shall be no charge made for its use; but where it is used for any other purpose deemed proper and suitable by the Auditorium Board, such Board may charge a reasonable fee for such use, and all funds so received shall be under the management and control of the Auditorium Board and shall be used only for its purposes; Provided, however, that since the purpose of building and operating the municipal auditorium is, in general, to afford a place where the public may gather to witness and hear educational and cultural events, including conventions and gatherings of public importance and interest, in no event shall the auditorium ever be used for any wrestling match, boxing contest, basketball game or other competitive exhibition of athletic skill or prowess. After the auditorium shall have been constructed and completed in accordance with the present plans of Gordon Ferguson, architect, as approved by John Gaw Meem and Associates, as architects for the University of New Mexico, no substantial change, alteration or additions shall be placed upon or to the auditorium building, without the consent of both parties to this contract.

"7. In consideration of the commitments of the University hereinabove set forth: to provide a site for the auditorium, a parking space, the services of a janitor, and the electricity and gas necessary to the operation of the auditorium, the University shall be entitled to at least one-fifth of the total utilization of the auditorium and its facilities within any calendar year, the dates and hours of such utilization, whether by day or by night, or both, to be scheduled on a reasonable and equitable basis by agreement between the parties; Provided, however, that the auditorium and its facilities shall be made available to the University:

"(a) At each Commencement season, including the Baccalaureate ceremony or address and Commencement exercises and ceremonies, and at such other regular convocations as shall be scheduled in the calendar of the University as published in its catalogue.

"(b) On all other occasions when, at the time the Auditorium Board receives notice from the University of its desire to use the auditorium and its facilities, no previous commitment by the Auditorium Board shall have been made for the date requested.

"8. In the event a disagreement or controversy shall arise between the Auditorium Board and the Regents of the University with respect to the use of the auditorium or any matter which is not covered herein specifically or by fair implication, then at the request of either party to this agreement, each shall appoint one arbitrator, and the two shall appoint another, who shall arbitrate the matter, and the decision of the majority of whom shall be final.

"9. The University reserves the right to use the parking space above mentioned for its own purposes at all times when it is not required for persons attending at the auditorium, but the University agrees that it will never make any charge for parking space of persons attending public functions at the auditorium. At all times when the auditorium is being used by the University or for any University purpose, the University shall provide all necessary attendants to handle the crowds and police the parking space; at all other functions, the City shall provide the same.

"10. In case the auditorium is damaged or destroyed by any cause against which insurance coverage is carried at the expense of the City, the proceeds of such coverage shall be used to repair or restore the auditorium for use under the terms of this agreement throughout the remainder of the lease period, but should the auditorium be destroyed and not repaired, or should it be abandoned or removed by the City, then the term of this lease shall end and the property shall be restored to the possession of the University, and at the end of the term of this lease the City shall have the right to remove any improvements then existing upon the real estate, if it so elects, without the payment of any compensation to the University, or it may leave the improvements upon the real estate and they shall become the property of the University, at the expiration hereof.

"11. The City of Albuquerque shall have the right to renew and extend this lease according to all of its terms and conditions for an additional period of Ninety-nine (99) years from and after the expiration of the primary term hereby provided, by giving to the Regents written notice not less than One (1) year before the expiration of the primary term hereof.

"12. The parties, in making this agreement, have entered into it with the hope and belief that the use of the facilites to be provided by the auditorium shall be of great advantage and benefit both to the people of the City of Albuquerque and the faculty and student body of the University of New Mexico, and they pledge to each other that on all occasions, when and if questions arise concerning the true intent and meaning of this contract, that they will endeavor to so treat with each other as to give evidence of the highest good faith and the greatest consideration each for the other, in order that unseemly and unfortunate differences may never develop between them, and they realize that in return for the use of valuable lands and parking space, and for the funds which the Regents shall invest in grading the site, after the building is completed, the University will get, as its return, only the use of the auditorium and its facilities, as herein provided.

"13. The parties agree that neither will ever make, or undertake to make, an assignment of this lease, or a sublease, or an arrangement of any kind contemplating a continuous use of said auditorium by third persons for any commercial purpose, without the consent of the other, but this restriction shall not prevent either party letting the auditorium and its facilities to persons, firms, corporations, clubs and associations for use along the line and for the purposes hereinabove expressly set forth, and, in no case, in contravention thereof.

"14. The superintendent or manager of the auditorium shall keep sufficient records so as to show the use of the auditorium and its commitments for future use, and shall furnish a copy of the same to the University not less than once a month.  *  *  *"

Subsequently, the parties attempted to modify the agreement whereby the University, in consideration of being absolved of its obligation to furnish light, heat, power, and janitorial service, proposed to furnish funds for the completion of the auditorium by issuing its revenue bonds in a sum not less than $200,000 nor more than $250,000. The proposal, however, was withdrawn and an alternate proposal was submitted whereby the University would pay an annual rental of $10,000 for 30 years if the city would finance the construction. The latter offer was accepted and, at a meeting held February 27, 1951, the commission directed its attorney to prepare an ordinance under the provisions of Chap. 51, Laws of 1935, Sections 6–301 to 6–308, 1941 Comp., authorizing the issuance and sale of revenue bonds in the sum of $250,-000 for the purpose of raising the additional funds.

Appellant seeks to enjoin appellees (a) from adopting or acting upon the proposed ordinance, (b) from authorizing or entering into any contract for the construction of an auditorium under the plans, specifications, and proposals aforesaid, (c) from doing any other act or thing in furtherance of the construction of an auditorium on the land of the University, and (d) from amending the purported lease contract.

From an adverse judgment, appellant brings the cause here for review. The claimed error is argued under the following points:

"(1.) The Constitution of New Mexico, Art. 9, Sec. 12, limits the power of the Legislature to authorize municipalities to issue any bonds except after submission thereof to vote of specified electors, and, for contravening such limited power, Laws of 1935, ch. 51, art. 1, sec. 2 is inoperative.

"(2.) In any event, Laws of 1935, ch. 51, is also unconstitutional in authorizing auditorium bonds to be issued without a vote of the qualified electors of the municipality because it discriminates unreasonably in favor of federal or state agencies

as purchasers of such bonds, by giving such purchasers the option to require submission to such vote while denying it to others.

"(3.) Apart from other constitutional considerations, the project for the construction of the civic auditorium on university land and for substantial use by the university is prohibited by art. 9, sec. 14, of the Constitution of New Mexico.

"(4.) The equitable relief sought below by appellant was within the power and jurisdiction of the court to grant, and it should have been granted."

Article 9, section 12, New Mexico Constitution, reads: "No city, town or village shall contract any debt except by an ordinance, which shall be irrepealable until the indebtedness therein provided for shall have been fully paid or discharged, and which shall specify the purposes to which the funds to be raised shall be applied, and which shall provide for the levy of a tax, not exceeding twelve mills on the dollar upon all taxable property within such city, town or village, sufficient to pay the interest on, and to extinguish the principal of, such debt within fifty years. The proceeds of such tax shall be applied only to the payment of such interest and principal. *No such debt shall be created unless the question of incurring the same shall, at a regular election for councilmen, aldermen or other officers of such city, town or village, have been submitted to a vote of such qualified electors thereof as have paid a property tax therein during the preceding year, and a majority of those voting on the question, by ballot deposited in a separate ballot box, shall have voted in favor of creating such debt."*

The pertinent provisions of Chap. 51, Laws 1935, provides:

"* * * Notwithstanding the provisions of any general, special or local law it shall not be necessary for any governing body of such municipality to submit to the people of such municipality in which said auditorium is proposed to be erected the question as to whether such auditorium shall be erected, *nor shall it be necessary to submit to the people of such municipality in which said auditorium is to be erected the issuance of any bonds authorized hereunder to pay for or finance the erection of any such auditorium. * * *"* Sec. 6–302, 1941 Comp.

*"Where any of the federal or state agencies specified in paragraph 3 (§ 6–306) of this act purchase bonds from any municipality as defined herein, for the purpose of enabling such municipality to purchase, improve, erect, and maintain public auditoriums, whether the said bonds be issued hereunder or under the provisions of any other act, and such federal or state agency requires that the issuance and sale of such bonds shall be thereafter submitted to the people for ratification and approval, the mu-*

*nicipality shall have and it hereby is given the power to pledge to such federal or state agency the good faith of the municipality that said municipality will submit to the vote of the people therein at the time and in the manner required by the Constitution of New Mexico the ratification and approval of the issuance and sale of such bonds by such municipality."* Sec. 6–307, 1941 Comp. (Emphasis ours.)

Appellant argues that the provisions of Sec. 7, of the Act, Sec. 6–307, 1941 Comp., granting an option to Federal and State agencies the right to require ratification by the voters of the municipality, is discriminatory, in violation of Art. 2, Sec. 18, of the New Mexico Constitution. In this respect, appellant is in no position to complain. He does not suggest that he may become a purchaser of any bond. It is well settled that the denial of equal rights can be urged only by those who can show that they belong to the class discriminated against. Pueblo of Isleta v. Tondre and Picard, 18 N.M. 388, 137 P. 86; Asplund v. Alarid, 29 N.M. 129, 219 P. 786; In re Gibson, 35 N.M. 550, 4 P.2d 643.

Whether revenue bonds constitute a debt in the constitutional sense is the chief question posed. As an academic proposition we have no hesitancy in stating that revenue bonds, truly such, repayable from a special fund created for their re-tirement, as in the case of Seward v. Bowers, 37 N.M. 385, 24 P.2d 253, payable solely and wholly from moneys derived from sources other than general taxation, State Office Bldg. Commission v. Trujillo, 46 N.M. 29, 120 P.2d 434, do not constitute a general obligation on the part of the municipality. Hence, they create no "debt" in the constitutional sense prohibited by Const. Art. 9, Sec. 12. Seward v. Bowers, supra; State ex rel. Capitol Addition Building Commission v. Connelly, 39 N.M. 312, 46 P.2d 1097, 100 A.L.R. 878.

We entertain no doubt that in enacting Laws 1935, chapter 51, the enabling act under which it is proposed to issue the revenue bonds here involved, the legislature contemplated a special fund arising solely from sources separate and apart from general taxation; furthermore, that the site upon which the auditorium would rest should not be acquired by purchase or otherwise with funds arising in whole or in part from general taxation. This is necessarily so in view of the lien to which the enabling act subjects the auditorium and its site. Under no other conditions could the act validly waive the referendum enjoined by Art. 9, Sec. 12, of the New Mexico Constitution, preliminary to issuing such bonds. Whether the proposed plan for issuing the so called revenue bonds here involved meets those conditions presents the decisive question before us.

. We must turn to the enabling act itself to find what security the proposed revenue bonds have. A proviso in section 2 of the act describes the security. Chapter 51, Laws 1935, Sec. 6–302, 1941 Comp., reads: "Provided, however, that any bonds issued hereunder shall not constitute general obligations of any such municipality, *but the payment thereof shall be secured only by a lien against the auditorium and real estate upon which the same is erected* and a pledge of the net revenues of said auditorium as hereinafter provided; and Provided further that any bonds issued hereunder shall be payable solely and only out of the income derived from the operation of such auditorium *and by the property upon which the lien aforesaid is provided."* (Emphasis ours.)

The security then is the net revenues or income to arise from operation of the auditorium based on an annual rental of $10,000.00 over a 30-year period, payable to the city by the University and a mortgage on the auditorium itself along with the real estate occupied by it to be executed by the city pursuant to section 3 of the act in confirmation of the lien declared under the language of section 2 quoted, supra. But where is the money to come from that will erect and equip the auditorium? It will be the proceeds of two previous general obligation bond issues aggregating $615,000.00 plus the sale price under congressional authorization of one-

half of certain lands owned by the city in the sum of $249,000.00, to be added to the proceeds of the $250,000.00 issue of revenue bonds, the right to issue which is challenged in the present suit.

The general obligation bonds from which the major portion of the funds going into the project arise are repayable by moneys secured through general taxation. True enough, those bonds already have been authorized in two separate referenda but this fact does not answer the question whether giving a mortgage on real property they help to purchase creates a debt in the constitutional sense calling for approval at a still further referendum. Yet if we find no answer to that question in the fact mentioned, we do find it in the case of Palmer v. City of Albuquerque, 19 N.M. 285, 142 P. 929, L.R.A.1915A, 1106. The decisive holding in the case is set forth in the last or 6th paragraph of the syllabi reading, as follows: "The borrowing of money on the security of property already belonging to the municipality, without giving the lender any recourse against the body corporate or its property other than the particular property pledged to secure the money advanced, if the constitutional limitation of municipal indebtedness be thereby exceeded, is the creation of indebtedness, within the prohibition of the Constitution."

If the giving of the mortgage in that case created a "debt" within the pro-

hibition of Art. 9, Sec. 13, of the New Mexico Constitution, limiting municipal indebtedness to four (4) per cent. of the assessed valuation as shown by the last preceding assessment for state and county taxes, by the same token the mortgage lien declared by the act here involved on the auditorium and site creates a "debt" within the prohibition found in Art. 9, Sec. 12, of the New Mexico Constitution, except as the creation of same may have received an approving vote at the referendum therein specified. Cf. State ex rel. Capitol Addition Bldg. Commission v. Connelly, supra.

■ But it is said the suit is premature because no mortgage or other lien has yet been authorized or threatened. This is unnecessary as a basis for the relief sought since the act itself declares the lien it directs on the auditorium and site, as well as a pledge of the net revenues to arise from operating the auditorium, *shall* secure the bonds issued. The statutory lien thus created is to be read into bonds as effectually by interpretation as if expressly set out therein. 12 Am.Jur. 769, section 240 under "Contracts." Hershey v. Cole, 130 Cal.App. 683, 20 P.2d 972; Oklahoma Cotton Growers' Association v. Salyer, 114 Okl. 77, 243 P. 232. The force of the statute in creating a constitutional "debt" is of no less import, than if done by act of the parties themselves on their own initiative, and we may add it has no greater validity without approving vote. We cannot accept the construction of the language employed as merely authorizing the lien where the parties think it desirable and as permitting its omission where felt unnecessary or undesirable, as urged upon us by counsel for the city. The security afforded by the act is to be read into any bonds issued under it. Hershey v. Cole, supra; Oklahoma Cotton Growers' Association v. Salyer, supra.

■ Having concluded that the debt to be created which the bonds represent is one calling for the popular referendum provided by Art. 9, Sec. 12, New Mexico Constitution, we might very well close our opinion at this point. However, one further instance of invalidity is urged and in view of the fact that this represents the third effort by the City of Albuquerque or Bernalillo County to secure funds by bond issues for construction of an auditorium, see Varney v. City of Albuquerque, 40 N.M. 90, 55 P.2d 40, 106 A.L.R. 222, and Hutcheson v. Atherton, 44 N.M. 144, 99 P.2d 462, we do not feel disposed to leave unanswered any question properly presented touching the validity of these bonds.

■ The further claim of invalidity referred to in the preceding paragraph is that the proposed bond issue will violate Art. 9, Sec. 14, New Mexico Constitution,

prohibiting the state, any county, school district or municipality from lending its credit, or making any loan or donation to or in aid of any person, association or public or private corporation, except as otherwise provided in the constitution. It is said the City of Albuquerque is lending its credit to the University of New Mexico in mortgaging its property for the latter's benefit. But we have held this provision has no application where the lending of credit is under legislative sanction by one subordinate governmental agency to another. Harrington v. Atteberry, 21 N.M. 50, 153 P. 1041; White v. Board of Education of Silver City, 42 N.M. 94, 75 P.2d 712; Hutcheson v. Atherton, 44 N.M. 144, 99 P.2d 462. Accordingly, if this be a lending of credit by the City of Albuquerque to the University as claimed, it constitutes no violation of this constitutional provision.

It follows from what has been said that the judgment reviewed is erroneous and should be reversed. The cause will be remanded to the district court with a direction to it to set aside its judgment and enter an order permanently enjoining the defendants (appellees) in accordance with the views herein expressed. And It Is So Ordered.

SADLER and McGHEE, JJ., concur.

LUJAN, C. J., and COORS, J., having recused themselves, not participating.