Note.—See under (1) 37 Cyc. p. 1185 (Anno) ; 26 R. C. L. pp. 454, 459 ; 4 R. C. L. Supp. p. 1664. (2) 37 Cyc. p. 1185 (Anno).

---

## OKLAHOMA COTTON GROWERS ASS'N v. SALYER.

No. 15873—Opinion Filed Nov. 17, 1925.

Rehearing Denied Feb. 2, 1926.

(Syllabus.)

1. Constitutional Law — Impairing Obligation of Contract—Law as Part of Contract.

The existing statutes and the settled law of the land at the time a contract is made become a part of it and must be read into it.

All contracts are formed to be construed in the light of the rules and principles of law applicable to the subject-matter of the transaction, and those rules and principles control the rights of the parties; the laws upon the subject of a contract are read into it and become a part thereof to the same extent as though they were written into its terms.

Where parties enter into a contract by virtue of authority derived from a certain act and in view of such rights as are created, defined, and conferred by such act, it is elemental that the rights of the parties must be construed by the provisions of the act.

Where a contract is entered into under such provisions and conditions, and such contract is alleged to have been breached while such act is still in force, then if any provision or terms contained in such contract are in. violation of rights conferred by such act, which are remedied by a subsequent act, such subsequent act is void as to such provisions and violative of section 15, art. 2 (Bill of Rights) of the Constitution, as tending to violate the obligation of contracts.

2. Agriculture — Growers Marketing Association—Noncompliance of By-Laws with Statute—Invalidity of Contract Regulating Member's sale of Products.

Where the primary principle of an act is

to authorize the formation and incorporation of mutual associations, the moving principle of such act being the mutuality of obligations, within the specific provisions and limitations of such act, a contract entered into in violation of such provisions is unenforceable and void for lack of mutuality.

Where an act provides that an association may adopt by-laws compelling a member of such association to sell all his products exclusively through such association, but specifically provides that the conditions upon which such obligation may be enforced must be based upon condition that a member be granted an opportunity to withdraw from membership, and the articles of incorporation and by-laws of such association contain provisions for forcing a member to sell exclusively through the association, but fail to give such member an opportunity to withdraw from the association, such obligation is in violation of the statutes and cannot be enforced for lack of mutuality.

Where the statutes provide that an association may adopt by-laws providing for liquidated damages for breach of an agreement, but specifically provide that the condition upon which such an obligation may be enforced shall be based upon a member being given an opportunity to withdraw from the association, upon proper notice, and where such articles and by-laws provide for the payment of liquidated damages, but fail to provide for an opportunity to withdraw upon proper notice, such liquidated damages cannot be enforced for failure to comply with conditions precedent, nor is such association entitled to relief in equity by injunction from further breach, nor a decree of specific performance.

**3. Same—Action by Association to Enforce Provisions—Insufficiency of Petition.**

Where a petition for liquidated damages, for injunction against further breach, and for specific performance, shows on its face that plaintiff has not complied with conditions precedent, such petition is subject to demurrer for failure to state a cause of action in law, or to state grounds for relief in equity.

Error from District Court. Caddo County; Will Linn, Judge.

Action by the Oklahoma Cotton Growers Association against J. E. Salyer. Judgment for defendant, and plaintiff brings error. Affirmed.

Aaron Sapiro, H. H. Edwards, and Embry, Johnson & Tolbert, for plaintiff in error.

Bond, Melton & Melton, for defendant in error.

HARRISON, J. This is a suit by Oklahoma Cotton Growers Association, a corpora-

tion, against one of its members, J. E. Salyer, for damages for breach of his membership agreement and for specific performance of such agreement, and for injunction against further breach thereof.

The substance of the petition is that the Association, having incorporated under chapter 22, S. L. 1917 (now art. 16, chap. 34, C. S. 1921), for the purpose of buying, storing, marketing, and thereby stabilizing the market price of cotton grown by its members, entered into an agreement with defendant, Salyer, on December 3, 1920, by which Salyer became a member of the Association and in which he agreed not to sell any cotton grown by him during the years 1921 to 1927, inclusive, to any person other than the Association, and that for all cotton grown by him and sold by him to parties other than said Association, he would pay the sum of five cents per pound, $5 per hundred pounds, as liquidated damages to the Association, and that, in case of breach of such agreement by defendant, the Association might sue him in a court of equity, and obtain a writ of injunction, a decree for specific performance of contract and judgment for damages, attorney fees and costs, the agreed measure of damages being five cents per pound for all cotton sold to parties other than the Association; that in 1922 he breached his agreement by selling the cotton grown by him during said year 1922, approximately 12,500 pounds, to parties other than the Association, thereby breaching his agreement and damaging the Association. wherefore it prayed for the damages fixed by the agreement, for specific performance of the agreement, for injunction against further breach thereof, and for attorney's fee and costs.

After issuance of a temporary restraining order and some other preliminary proceedings not material to a determination of the questions involved, defendant presented three demurrers to plaintiff's petition:

(1) A special demurrer on grounds that the facts alleged were not sufficient to warrant a decree of specific performance

(2) A special demurrer because the petition did not show plaintiff entitled to injunction.

(3) A general demurrer on grounds that the facts alleged were not sufficient to constitute a cause of action.

The court sustained each of said demurrers and dismissed the action, and plaintiff, electing to stand upon its petition, excepted

to the court's ruling and appeals to this court for reversal thereof.

As the court gave no reasons why, nor assigned any grounds upon which he sustained said demurrers, plaintiff in error, in its original brief, presents such questions only as were presented to the trial court in the oral arguments on the demurrers. These questions are grouped and presented by plaintiff in error under the following propositions:

"1. The Co-Operative Marketing Act of 1923 (chapter 181, Session Laws 1923), incorporated as amendments to sections 5598 to 5621, Compiled Statutes of Oklahoma, 1921, is the law governing this case. Plaintiff Association has been brought under this act by the provisions of the act itself. Its contract with defendant was of a type expressly authorized by the act. The remedies sought by plaintiff are specifically provided for in the act. The petition states a cause of action in accordance with the rights bestowed by the act.

"2. The Co-Operative Marketing Act is constitutional under both the federal Constitution and the Constitution of the state of Oklahoma.

"3. The marketing agreement is not invalid as in restraint of trade.

"4. The contract between the Association and defendant expressly provides for the remedies sought by plaintiff. Even without the authority of a statute, plaintiff is entitled to the relief asked for."

Each of the foregoing general propositions is subdivided and argued from different standpoints in support of the petition and of plaintiff's right to the relief sought, citing authorities. In his answer brief, defendant in error contends that a cause of action is not stated in the petition and that plaintiff in error is not entitled to the relief sought nor to any relief, for numerous reasons, which are separately presented and argued, with citation of authorities in support of such contentions.

It is unnecessary to specifically determine each and every contention made by the parties. From the very nature of the case, coming as it does upon demurrer to the sufficiency of the petition, it naturally presents questions which necessarily must be determined and which, being determined, effectually dispose of the case.

One of such questions is whether the provisions of the contract are controlled by the Act of 1917, or by the Act of 1923, there being a material difference between the provisions of the two acts and a controversy as to which act controls. Pertinent to this controversy is the fact that before the passage of the Act of 1917, there was no authority of law for the incorporation of associations of this character, no authority of law for making such a contract as the one sued upon, no law defining the rights of parties to such a contract. The contract in question was entered into December 3, 1920, the Act of 1917 being then in effect; the Association was incorporated under the authority of said act, thus deriving its powers and privileges from said act; the parties entered into the contract in question by virtue of authority derived from said act and in view of such rights as were created, defined, and conferred by said act; such being true, it is elemental that all rights derived exclusively from said act and becoming involved under a contract made in view of such act must be controlled by the provisions of such act. Going to the act itself to find what rights are therein given, we find it to be entitled:

"An Act to provide for the formation of co-operative agricultural or horticultural associations, instituted for the purpose of mutual help and not having capital stock or conducted for profit, and for other purposes".

Section 2 of the act (sec. 5599, C. S. 1921) is as follows:

"Co-Operative agricultural or horticultural associations, instituted for the purposes of mutual help, and not having capital stock or conducted for profit, may be formed, under the provisions of this act, by any number of persons, not less than five, engaged in agriculture or horticulture".

The pertinent portion of section 3 of the act (sec. 5600, C. S. 1921) is as follows:

"An association may, as agent for its members or any of them, perform for them services connected with the production, preservation, drying, canning, storing, handling, utilization,\ marketing, or sale of agricultural products produced by them".

Section 4 of the act (sec. 5601, C. S. 1921) provides:

"The persons uniting to form an association shall enter into articles of association in writing, which shall state: * * * (b) The class of service to be performed for its members by the Association, which services shall be among those mentioned in section three of this act: * * * (g) Any other provisions, not inconsistent with law, which the association may see fit to adopt, governing the regulation and the conduct of its affairs".

Section 6 of the act (sec. 5603, C. S. 1921) provides:

"The association shall have power, within

the limitations of this act: * * * (c) To perform for members the services described in its articles of association".

It should be borne in mind that the services to be proposed in its articles of association must be among those conferred by section 3 of the act, and not inconsistent with law. Subdivision (g), supra.

Section 12 of the act (5609, C. S. 1921) provides:

"Within 40 days after the filing of a copy of the articles of association in the proper county office, as prescribed in section 4 of this act, a call, signed by not less than a majority of the directors, shall be issued for a meeting of the members. At such meeting, or any adjourned session or sessions thereof, by-laws regulating the conduct and management of the association shall be adopted. Such by-laws shall, within the limitations of this act, prescribe: * * * (b) The number and qualifications of members, the conditions under which membership shall be granted and terminated, rules governing the exercise of the privileges of membership and the issuance, transfer and cancellation of membership certificate, and the manner of ascertaining the interests of members in the assets, if any, in the possession of the association."

Section 13 of the act (5610, C. S. 1921) is as follows:

"The by-laws may require the members to sell all or any part of their specifically enumerated agricultural and horticultural products and to buy all or any part of their specifically enumerated farm supplies, exclusively through the association; but, in such case, shall specify a reasonable period, in each year, during which any member, by giving to the association the notice prescribed in the by-laws, may withdraw and be released from his obligation to employ the services of the association in respect to such products and supplies. The by-laws may fix as liquidated damages specific reasonable sums, in amounts fairly related to the actual damages ordinarily suffered in like circumstances, to be paid to the association to reimburse it for any damage which it or members may sustain by the failure of any member to perform any obligation to the association under the articles of association, the by-laws or any contract with the association, and any such provision shall be valid and enforceable in the courts of this state."

Thus it appears that certain rights are created by the foregoing statutes, rights which enter into and become a part of all contracts made under authority and within the provisions of said statutes, rights which constitute a material part of the consideration for entering into such contracts and which become vested upon the making of such contracts, among which are the right: (1) That the Association authorized to be formed by the act must be formed under the provisions of the act (section 2, supra). (2) That the services to be rendered by such Association must be limited to those prescribed by the act (section 3 and subdivisions (b) and (g) of section 4, supra). (3) That the powers of such Association shall be within the limitations of the act (section 6, supra). (4) That within 40 days after filing the articles of association, a code of by-laws shall have been adopted, which shall be within the limitations of the act (section 12, supra). (5) That the by-laws thus adopted shall contain a provision by which a member may withdraw from the Association and be released from his obligations to the Association (section 13, supra). (6) That such measure of liquidated damages as may be fixed in the by-laws must be "reasonable sums in amount fairly related to the actual damages ordinarily suffered in like circumstances" (section 13, supra).

These are rights which are specifically created by the Act of 1917, and which, by the provisions of said act, enter into all contracts made under authority of said act, became a material part of the consideration, all of which rights accrued to defendant, Salyer, upon his entering into the contract in question. Therefore, any subsequent act tending to destroy or impair these rights would be void as to such tendency for "impairing the obligation of contracts" and violative of section 15 (Bill of Rights), art. 2, of the Constitution, which prohibits the passage of any law impairing the obligation of contracts.

Furthermore, it is alleged that the contract in question was breached in 1922, while the Act of 1917, the act under which the contract was made, was yet in force and before the passage of the Act of 1923. Hence, if the Association had any right of action by reason of such breach, such right accrued to it at the time of the breach and must necessarily be determined by the law in force at that time.

"The existing statutes and the settled law of the land at the time a contract is made become a part of it, and must be read into it. All contracts are, therefore, to be construed in the light of the rules and principles of law applicable to the subject-matter of the transaction, and those rules and principles control the rights of the parties, except where the contract discloses an intention to depart therefrom. However, from the fact that every contract, not expressly providing to the contrary, is presumed to

have been made with reference to the then existing state of the law, it follows that if a subsequent change is made therein which in any degree affects such contract, such change is presumed to be excepted therefrom." (6 R. C. L. p. 855) : 13 C. J. p. 247; Deweese v. Smith, 106 Fed. 438; 66 L. R. A. 971; cases in note to Union Central Ins Co. v. Pollard, 36 L. R. A. 271.

"The laws upon the subject of a contract are read into and become a part thereof to the same extent as though they were written into its terms". Armour Packing Co. v. United States, 153 Fed. 1, 14 L. R. A. (N. S.) 400.

Therefore the Act of 1917 is controlling, and it is unnecessary to analyze the provisions of the Act of 1923, or to pass upon the validity of such act.

So, if the contract deprives Salyer of those rights above mentioned, it violates the statutes and becomes unenforceable under the statutes. The contract itself consists, as a whole, of two separate agreements, viz., Oklahoma Cotton Growers Association Agreement" and Oklahoma Cotton Growers Marketing Agreement". These two agreements entered into and become a part of each other, thus forming the entire contract, and in the record and briefs are referred to respectively as "Association Agreement" and "Marketing Agreement".

The provisions of the contract which directly bear upon the statutory rights of a member are:

Section 2 of the "Marketing Agreement", which is as follows:

"We will become members of the Oklahoma Cotton Growers Association, a corporation without capital stock, to be organized under the laws of the state of Oklahoma".

Section 11 of the "Association Agreement," which is as follows:

"The Association will confine itself to the problems and marketing of cotton only and for its members only. It shall have suitable articles of incorporation and by-laws, stating the purposes and powers of the Association; the rights and duties of members; manner of forfeiture of membership; withdrawal or expulsion from membership; value of property interest in withdrawal; and any other necessary, pertinent, and important points of organization as determined by the organization committee."

Section 2 of the "Marketing Agreement," which is as follows:

"The Association agrees to buy and the grower agrees to sell and deliver to the Association all of the cotton produced or acquired by or for him in Oklahoma during the years 1921, 1922, 1923, 1924, 1925, 1926, and 1927".

And section 17 of the "Marketing Agreement," which is as follows:

"(a) Inasmuch as the remedy at law would be inadequate; and inasmuch as it is now and ever will be impracticable and extremely difficult to determine the actual damage resulting to the Association, should the grower fail so to sell and deliver all of his cotton, the grower hereby agrees to pay to the Association for all cotton delivered, sold, consigned, or marketed by or for him other than in accordance with the terms hereof, the sum of five cents per pound as liquidated damages for the breach of this contract; all parties agreeing that this contract is one of a series dependent for its true value upon the adherence of each and all of the growers to each and all of the said contracts.

"(b) The grower agrees that in the event of a breach or threatened breach by him of any provision regarding delivery of cotton, the Association shall be entitled to an injunction to prevent breach or further breach hereof and to a decree that this is a contract for the purchase and sale of personal property under special circumstances and conditions, and that the buyer cannot go to the open markets and buy cotton to replace any which the grower may fail to deliver.

"(c) If the Association brings any action whatsoever by reason of a breach or threatened breach hereof, the grower agrees to pay to the Association all costs of court, costs for bonds and otherwise, expenses of travel and all expenses arising out of or caused by the litigation and any reasonable attorney's fee expended or incurred by it in such proceedings; and all such costs and expenses shall be included in the judgment and shall be entitled to the benefit of any lien securing any payment hereunder."

Thus it appears from section 1 of the Association Agreement that growers become members of the Association upon condition that it be organized under the law of Oklahoma. The law of Oklahoma, section 12 of the Act of 1917, provides that within 40 days after the filing of articles, there shall be a meeting held at which by-laws shall be adopted, such by-laws to be within the limitations of the act, and, among other things, shall prescribe conditions under which membership may be granted and terminated. Section 13 of said act provides also that the by-laws may require members to sell any or all of their products exclusively through the Association, but in such case they shall also provide a method by which members may withdraw from the Association; that is, if the by-laws do compel members to sell

their products through the Association, they must also provide a means by which members may withdraw from the Association. The by-laws required by the act have not been adopted. The right of the Association to compel members to sell their products through the Association is conditioned upon a right being given to the members to withdraw from the Association. The statute prescribes these conditions, hence the Association cannot enforce the obligation of members to sell through the Association, if it had denied them a means of withdrawal.

Besides, under said section 12 of the act, members have a right to by-laws which shall prescribe conditions under which membership may be terminated, regardless of a provision compelling them to sell their products through the Association. Members have this unconditioned right, but, notwithstanding these provisions in section 12, and the conditions prescribed in section 13, and the requirements of the act that the formation, articles, by-laws, powers, and services of the Association shall be within the limitations of the act and not inconsistent with law, which means that they shall conform to the provisions of the act, and also to all other laws bearing upon its powers, yet the agreement, contract in question, prescribes the conditions under which membership may be granted and imposes the obligation upon members to sell all their products exclusively through the Association, but does not prescribe the conditions or means of withdrawal. Thereby it deprives defendant, Salyer, of rights expressly given him by statute, and thus violates the very conditions upon which the statutes give it existence.

Said section 13 of the act provides, also, that said by-laws may fix an amount as liquidated damages for breach of contract, but it prescribes a condition and basis upon which such liquidated damages shall be fixed, viz:

"That such damages shall be reasonable sums, in amount fairly related to the actual damages ordinarily suffered in like circumstances".

The agreement violates this statute, takes away this statutory right, by providing a fixed, arbitrary, unconditional lump sum of $5 per hundredweight for all cotton sold to parties other than the Association, without reference to the reasonableness of such damages, without provision for determining whether they are reasonable or whether they are fairly related to the actual damages sustained, or fairly related to the actual damages ordinarily suffered in like circum-

stances. Thereby the member is not only deprived of rights given him by said act, but is deprived of substantial rights given him by other provisions of law, one of which, in an action for a money judgment, is the right to have questions of fact and the amount of recovery determined by a jury. Section 532, C. S. 1921.

Under the provisions of said section 13, the questions, what would be reasonable sums and whether such sums are fairly related to the actual damages, what the actual damages are, and whether fairly related to the actual damages ordinarily suffered in like circumstances, are questions of fact which a member has a right to have determined by a jury. Thereby the contract deprives a member of rights given him by the act as well as of rights given him by other laws. The powers of the Association must be not only within the limitations of the act, but must not be inconsistent with other laws.

Said section 13 of the act provides, further, that the obligations of members shall be enforceable in the courts of the state. This, of course, means that they shall be enforced in the manner prescribed by law for the enforcement of similar obligations and in such courts of the state as under the law of the state have jurisdiction over such matters. It means that if a member be sued for failure to perform any obligations to the Association, he shall have his defense determined in a court of competent jurisdiction, a court which, under the law, is given jurisdiction to try such class of cases, and wherein he shall have his defenses determined in the manner prescribed by law for determining such defenses. The contract, section 17 of the "Marketing Agreement", takes these rights away from the defendant member, deprives him of the right and manner of defense which the law gives him, deprives him of his right to have his defenses determined in a court having legal jurisdiction to try his case and forces him into a court of equity, in effect forces him to confess judgment in a court of equity, forces him to submit to his hands being so tied by injunction and decree of specific performance as to deprive him of all right of defense. Furthermore, it attempts to say to a court of equity what its jurisdiction shall be and what its judgment shall be. It may suffice to say that such a contract is unenforceable, in either a court of law or court of equity, for the reason that it fails to do the things which the law requires it to do, and does things which the law prohibits it from doing. The law requires that the Association shall

adopt by-laws heretofore mentioned; this the Association has not done. The law prescribes that the Association shall not exceed the powers given it by law; this the Association has done, as heretofore pointed out. The question of "waiver" is discussed in the briefs, but there is no express waiver by defendant of any statutory rights, and the doctrine of "implied waiver" does not obtain.

Section 2 of the act requires that the Association be formed under the provisions of the act. Section 3 prescribes what services may be performed by the Association, and section 4 provides that the services to be performed shall be those mentioned in section 3, and not inconsistent with law. Section 6 prescribes that the powers of the Association shall be within the limitations of the act. Section 12 prescribes that it shall adopt by-laws which shall be within the limitations of the act, and under section 1 of the "Association Agreement" membership is applied for and accepted by a member upon condition that the Association be organized and conducted under and within the limitations of the act; whereby the doctrine of implied waiver is precluded. Besides, if there had been an intention on the part of Salyer to waive, there would have been a fatal lacking of mutuality of obligations and the contract unenforceable because of this defect; the Association having failed to comply with the very conditions upon which this right or recovery for breach and its right to enforce Salyer's obligation to sell all his cotton to the Association rests.

The Association contends that having alleged compliance with all conditions precedent, such allegation is confessed as true upon demurrer, but this contention is refuted on the face of the petition, for, notwithstanding the allegations of a full compliance with all conditions precedent, the two agreements, viz., the "Association Agreement" and "Marketing Agreement," which were attached to and made part of the petition, show on their face that the Association had not complied with the conditions upon which its right of recovery must rest.

The Association cannot recover damages, for the reason that it is seeking to collect damages stipulated in violation of the statutes.

It cannot enforce specific performance, because it has failed to comply with the conditions upon which the right to specific performance is made to rest.

It is not entitled to injunctive relief, because it had failed to show that Salyer was obligated to sell all of his products to the Association. It is contended by Salyer that the damages sought to be enforced are penalties agreed upon in violation of statutes, and decisions of this court cited holding agreements of this character to be in the nature of penalties rather than liquidated damages, but it is immaterial in this case whether they be in the nature of penalties or liquidated damages, for the reason that the damages here contended for are violative of the express provisions of the statute under which the contract was made. Therefore, whether they be penalties or liquidated damages, within other provisions of the statute, they are violative of the Act of 1917.

The constitutionality of acts of this character is also challenged by defendant as being in restraint of trade, and many authorities cited in support of the contentions made in this regard, but the argument on this question is in the main directed toward the provisions of the Act of 1923, which, as we have heretofore determined, are not controlling and not directly involved in this case, and not being necessarily in the case, it would be only dictum to say whether or not they are constitutional. The obligations alleged to have been breached and the grievances sought to be redressed in this action are those which grew out of the Act of 1917 and became vested in the parties upon the signing of the contract, and the Association cannot recover under said act, for the reason, as we have heretofore pointed out, it is here seeking to enforce obligations and to recover for breach and to enjoin further breach of obligations attempted to be made in violation of said act.

It is therefore unnecessary, perhaps would be improper, to pass on the constitutionality of said act, the Act of 1917, for the reason that the Association is not here seeking to enforce the provisions of said act itself, nor to enforce rights derived from said act and thereby relying upon its constitutionality, but it is seeking to violate said act and to suppress rights specifically given by said act.

The trial court did not err in sustaining the demurrer to the petition, and the judgment is affirmed.

NICHOLSON, C. J., and BRANSON, MASON, HUNT, and CLARK, JJ., concur. PHELPS, LESTER, and RILEY, JJ., dissent.

Note.—See under (1) 12 C. J. p. 988, §596; 13 C. J. pp. 247, §19; 261, §41; 560, §523; 6 R. C. L. p. 855; 2 R. C. L. Supp. p. 229; 4 R. C. L. Supp. p. 447; 5 R. C. L. Supp. p. 374; 6 R. C. L. p. 327. (2) 2 C. J. p. 998, §26 (Anno). (3) 2 C. J. p. 998, §26 (Anno).