EMIDIO FREZZO, JOSEPH FREZZO, GUIDO FREZZO and GABRIEL FREZZO, a Partnership Trading as EMIDIO FREZZO & SONS, Plaintiffs,

*vs.*

DELAWARE MUSHROOM COOPERATIVE ASSOCIATION, a Delaware corporation, Defendant.

*New Castle, June 4, 1959.*

*H. Albert Young* and *Bruce M. Stargatt* of Morford, Young & Conaway, Wilmington, for plaintiffs.

*Joseph A. L. Errigo* and *O. Francis Biondi,* Wilmington, for defendant.

SEITZ, Chancellor: Plaintiffs are members of a family partnership engaged in the mushroom growing business. The defendant, Delaware Mushroom Cooperative Association, ("Association") is a cooperative organized under the Delaware laws providing for the creation of joint stock cooperative agricultural corporations. 3 Del.C. §§ 8501—8562.

Plaintiff, Emidio Frezzo, has been a member of the Association since shortly after its beginning in September 1939. As his sons came of age they were taken into the business and the partnership evolved. Emidio Frezzo was elected to the Board of Directors of the Association and still holds that position. The plaintiffs acquired one share of the Association's common stock as a partnership in August 1950. Also, at various times, plaintiffs deposited almost $10,000 with the Association evidenced by revolving fund certificates. This is money lent the Association without interest.

It has been the policy of the Association to get from its members estimates of their proposed production so that a suitable marketing plan might be formulated. For the years 1956 and 1957 the Board of Directors determined that each member should supply to the Association 75% of his daily production of mushrooms. In accordance with established policy a mimeographed contract called a "Marketing Agreement" was signed by the partnership. The partnership agreed therein to supply the Association with 75% of its production.

In August 1956, the partnership by letter notified the Association that it had leased to Hillcrest Mushroom Farms, Inc., ("Hillcrest"), 12 of its 14 double mushroom houses. The Association was informed that the production of the remaining two "doubles" would be available to the Association for the ensuing canning year. It was advised that since the partnership was no longer entitled to the production of the 12 leased "doubles," the partnership was relieved of that part of its responsibility.

The Association took the position that the leasing by the partnership to Hillcrest was not in good faith and that in consequence the

partnership had breached its Marketing Agreement by failing to supply 75% of its true production. The partners claimed that the lease was made for the reasons that it would give them a tax advantage; it would promote the efficiency of the operation and it would reduce the amount of capital tied up in the Association. They contend that their action was bona fide.

Pursuant to action taken at a meeting of the Board of Directors in September 1956, a letter was sent to the partnership warning that failure to provide the production of 14 double mushroom houses would violate the Marketing Agreement and would result in punitive action. In November 1956, plaintiffs were informed that a meeting of the board would be held to determine the action to be taken against them. On February 11, 1957, a meeting of the board was convened at which time evidence was taken as to whether the plaintiffs had violated the Marketing Agreement. On February 12, 1957, the partnership was notified that its membership was terminated for its alleged misconduct.

Thereupon plaintiffs instituted this action to enjoin the defendant Association from expelling plaintiffs and from refusing to accept the products from plaintiffs' two remaining houses. Subsequently, a restraining order was obtained preventing defendant from taking such action. Thereafter the parties filed stipulations of fact and this is a determination of certain agreed issues.

Plaintiffs state the basic issue to be whether the board of directors of the defendant Association had the power or authority to expel plaintiffs as common stockholders, even assuming that the arrangement between plaintiffs and Hillcrest was made in bad faith. Defendant states the issue to be whether the board had the power and authority to terminate the membership of plaintiffs. It will be noted that plaintiffs emphasize the question in terms of "stockholders" while defendant employs the word "members." Since the members of the Association must be stockholders the difference is not significant here.

Plaintiffs first contend that the statutes authorizing such Associations do not explicitly permit them to adopt by-laws providing for

the explusion of members.  The Association does not disagree.[1]  But it does argue that the following provision of 3 Del.C. § 8508 authorized the Association to adopt a by-law giving it the power to expel a member for cause:

> "Each association * * * may— * * *

> "(6) Make by-laws, not inconsistent with the law, for the management of its property, the regulation of its affairs and the conduct and management of the association."

The Association did adopt by-laws.  Under the by-laws, stock could only be sold to members.  A member could own only one share and was entitled to one vote.  Section 4 of the by-laws, headed "Stockholders" says in part that:

> "The membership of any person may be terminated for good cause at the option or discretion of the Board of Directors."

Section 8 of the by-laws is more explicit in this regard.  Defendant contends that Section 8, which follows, gave the directors the right to terminate plaintiffs' membership in the Association:

> "The board of directors shall have power: * * *

> "To determine and terminate the membership of any member of the association accused and found guilty of violating any rule, regulation, or order of the association, provided, however, that the membership of any member shall not be terminated except for cause, and no membership shall be terminated without granting such member the opportunity for a hearing before the board of directors, and provided further, that no membership shall be terminated except by the vote of not less than two-thirds of the directors present at any director's meeting called for that purpose in accordance with the provisions of these By-Laws."

Plaintiffs' counsel first argues that the Marketing Contract was not a "rule, regulation, or order of the association" within the meaning of the by-law, and thus, the by-law was inapplicable.  I shall assume that the Association's action was within the quoted terms of the by-

---

1. Both sides agree that there is no pertinent provision in the Articles of Association.

law. Plaintiffs next contend that the by-law is contrary to the Delaware public policy against the termination of a stockholder's rights as such. Once again, I pass over the contention and assume that the by-law does not run afoul of our public policy.

I now consider plaintiffs' basic argument that the by-law is in conflict with at least three provisions of the statute governing agricultural associations, viz., 3 Del.C. §§ 8511, 8523, 8531.

Section 8523, insofar as pertinent, provides:

"Any director of the association may, for cause, at any regular meeting, or any special meeting called for that purpose, be removed from office by the vote of not less than two-thirds of the stockholders present, or by the two-third vote of a representative body, created and authorized by the by-laws to cause such removal. Any officer of the association may, for cause, at any regular meeting of the board of directors, or any special meeting of the board called for the purpose, be removed from office by the vote of not less than two-thirds of the directors present."

In the quoted section the Legislature has explicitly provided for the removal of directors and officers. Admittedly there is no statutory provision explicitly dealing with the removal of members.

Section 8531 provides that:

"The certificate of common stock shall contain a provision that the association shall have an option to redeem the stock at par value plus declared and unpaid dividends when the owner thereof has for a period of twelve months, done no business with the association, and shall contain a further provision that no sale or transfer of stock shall be valid without the written consent of the association, and, if the association withholds its consent to such sale or transfer, then the association shall redeem such stock at par value plus declared unpaid dividends."

The foregoing section deals specifically with the right of and responsibility of the association with respect to the redemption and transfer of stock. There is no mention of any redemption right in the event the member is removed for cause.

Then, Section 8511 provides in pertinent part as follows:

"The by-laws or contracts, or both, may fix, as liquidated damages, specific sums to be paid to the association to reimburse it for any damages which it, or the stockholders, sustain by the failure of any common stockholder or other patron to perform any obligation to the association under the articles of association, the by-laws, or any contract with the association, and such provision shall be valid and enforceable in the courts of this State. A court of equity may grant an injunction to prevent breach of the contract and may decree specific performance thereof."

The foregoing section gives the association substantial, albeit discretionary, remedies against a recalcitrant member. It makes no mention of the right of removal.

I turn finally to 3 Del.C. § 8509 which directs such an association to adopt "by-laws regulating the conduct and management of the association." Then 3 Del.C. § 8510 provides that the "By-laws shall, within the limits of this chapter, prescribe * * *", and there follows a list of matters, including action by stockholders. But most important, subsection 2 provides that the by-law shall provide, "The number of directors; the time and manner of their nomination, election and removal * * *". Subsection (5) thereof provides in part:

"(5) Any other provisions deemed proper and necessary to carry out the purposes, for which the association was formed, including provisions, if deemed advisable, for the creation of a representative body or council, which, among other powers, may be granted power to hear and determine charges against any member of the board of directors, and power to remove any director where such charges are sustained."

Thus, we see that the Legislature by clear language gave the right to adopt by-laws providing for the removal of directors. The right to adopt such a by-law with respect to members is significantly absent. Yet it is more "radical" than the removal of a director or officer.

The foregoing Sections of the Code, read together, by strong implications support the conclusion that the remedy of removal of a stockholder patron was not intended to be granted by the Legislature.

Defendant says that because there is apparently no authority to remove a stockholder from the ordinary business corporation, it does not follow that an agricultural cooperative is similarly restricted. Defendant says that these statutes must be construed in the light of a common law background which permitted such removal. Defendant first cites Section 22 of Packel, Law of Cooperatives, (3rd ed.), § 22. The author does recognize the existence of such a right but we are here dealing with a cooperative established under Delaware statute. Its rights must find support in the statute. Compare *Oklahoma Cotton Growers' Ass'n v. Salyer*, 114 *Okl.* 77, 243 *P*. 232. It is interesting to note that the Oklahoma statute involved in the cited case, in contrast to ours, authorized the adoption of a by-law prescribing the conditions under which membership could be terminated. Compare *State ex rel. Boldt* v. *St. Cloud Milk Producers' Ass'n*, 200 *Minn.* 1, 273 *N.W.* 603.

Defendant next cites 12A Fletcher, *Cyc. of Corps.*, (perm. ed.), § 5698 to the following effect:

"Corporations are frequently in express terms given the power to adopt bylaws and regulations for their government, or specifically for the expulsion of members. And the power exists, subject to limitations, even in the absence of an express provision therefor. Corporations, therefore, other than joint stock corporations, and other corporations for pecuniary profit, may always adopt reasonable bylaws, unless restricted by their charter or articles of association, declaring what shall constitute membership, and what shall operate as a forfeiture thereof, applicable to existing as well as future members, provided the bylaws are not contrary to law."

It will be noted that Fletcher qualifies his statement concerning the existence of the power even absent express provision by saying that such a by-law must not be contrary to law. There is not only the absence of a provision in our statutes granting the power to adopt such

a by-law but, more important, by implication such statutes prohibit the adoption of such a by-law. Consequently, the by-law relied upon by defendant is contrary to law.

This is not a case where the Association is without any remedy. It can invoke § 8511. I should emphasize that we are not here concerned with an unincorporated association.

I conclude that the applicable statutes, fairly construed, prohibit an association from adopting a by-law providing for the dismissal of members even for cause. If deemed desirable the Legislature can grant such power. Thus the by-law relied upon by defendant is invalid.

An order may be presented incorporating the findings here made.