**Geoffrey D. GRIEP, Plaintiff,**

v.

**YAMAHA MOTOR CORPORATION U.S.A., INC., Defendant.**

**No. Civ. 99–1772 ADM/SRN.**

United States District Court, D. Minnesota.

Nov. 16, 2000.

Barbara A. McFadden, Gary T. La-
Fleur, Babcock, Neilson, Mannella, La-
Fleur & Klint, P.L.L.P, Anoka, Minnesota,
for plaintiff.

Corina L. Leske, Ronald J. Lee, Faegre
& Benson LLP, Minneapolis, Minnesota,
for defendant.

## MEMORANDUM OPINION
## AND ORDER

MONTGOMERY, District Judge.

## I. INTRODUCTION

Defendant removed this action to U.S.
District Court from Anoka County District
Court [Doc. No. 1]. On October 23, 2000,
the undersigned United States District
Judge heard Defendant's Motion for Sum-
mary Judgment [Doc. No. 11]. Defendant
seeks summary judgment on Plaintiff's re-
maining claims[1] for: (1) breach of con-
tract; (2) unjust enrichment; and (3)
quantum meruit. For the reasons set
forth below, Defendant's motion is grant-
ed.

1. On September 21, 2000, Griep's defamation claim, Count 4, was dismissed with prejudice [Doc. No. 10].

## II. BACKGROUND

Defendant Yamaha Motor Corporation U.S.A., Inc. ("Yamaha") promotes its snowmobile products by sponsoring Yamaha's Snowcross Race Team. The race team travels across the northern United States and Canada to participate in snowmobile racing events. *See* Muetz Dep., at 9–10; Marier Dep., at 16. Race team members represent Yamaha during the racing events. *See* Griep Dep., at 24. Yamaha employed Plaintiff Geoffrey D. Griep ("Griep") to work as a full-time mechanic on Yamaha's racing team for the 1998–99 race season. Griep and Yamaha entered a written, one-year employment agreement that expired on June 1, 1999. *See* Leske Aff., Ex. A. Under this agreement, Griep earned $2,692.30 per month. *See* Leske Aff. ¶ 3, Ex. B.

In February 1999, the Yamaha race team traveled to Valcourt, Quebec, Canada. In the evening of February 21, 1999, the sponsors of the race held an awards banquet attended by hundreds of people. *See* Griep Dep., at 24–25; Muetz Dep., at 22. During the banquet, Griep and other members of Yamaha's race team sat at a long table with people who were associated with the Arctic Cat and Ski–Doo race teams. *See* Griep Dep., at 24–25; Eckstrom Dep., at 6–7. Griep began joking "back and forth" with a woman at the end of the table and their banter culminated in what Griep described as a " 'show me, dare me' type of thing." Griep Dep., at 27–28. Griep dared the woman, "I'll show you mine if you show me yours." Eckstrom Dep., at 7. Griep then stood up, unbuckled and unzipped his trousers, and opened them up for the woman to see. *See* Griep Dep., at 24, 29–30; Eckstrom Dep., at 6–8.

After the awards banquet, some team members told Gordy Muetz, Yamaha's snowmobile coordinator, and Chad Johnson, Yamaha's race team manager, about Griep's misbehavior at the banquet. *See* Muetz Dep., at 21–22, 26; Johnson Dep., at 11. Muetz and Johnson investigated the reports by talking to all of the witnesses they could locate, including all of the Yamaha team members and Dennis Eckstrom, the father of an Arctic Cat racer. *See* Muetz Dep., at 23–26; Johnson Dep., at 11, 23. Eckstrom told them that Griep had embarrassed Yamaha by exposing his penis at the awards banquet. *See* Eckstrom Dep., at 6–7. Muetz and Johnson informed Greg Marier, their manager, of the incident. *See* Muetz Dep., at 18–21, 23–28; Johnson Dep., at 14. Marier ordered Muetz to discharge Griep from his employment with Yamaha. *See* Muetz Dep., at 18–19, 29; Johnson Dep., at 14–16. Muetz and Johnson then told Griep that Yamaha was terminating his employment. *See* Muetz Dep., at 29; Johnson Dep., at 15–16. During this conversation Griep acknowledged that he had exposed himself, and told them that he engaged in that type of behavior to "express[ ] himself and gain[ ] attention for himself." Johnson Dep., at 16–17; Muetz Dep., at 30.

As a result of his termination, Griep received $8,937 in unemployment compensation benefits. *See* Griep Dep., at 15; Leske Aff. ¶ 4, Ex. C.

## III. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of material fact does not exist "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant has the burden of showing that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant meets its Rule 56(c) burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When weighing the evidence offered by the parties on a motion for summary judgment, this Court must review the evidence and all inferences drawn from that evidence in the light most favorable to the party opposing the motion. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348.

## B. Diversity Jurisdiction

 Diversity jurisdiction is present in this case pursuant to 28 U.S.C. § 1332. The parties do not dispute that they are citizens of different states. The amount in controversy is measured at the time the case was removed to federal court. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292–93, 58 S.Ct. 586, 82 L.Ed. 845 (1938); *see also Wisconsin Dep't. of Corrections v. Schacht*, 524 U.S. 381, 391, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998) ("subsequent reduction of the amount at issue below jurisdictional levels, destroys previously existing jurisdiction. In such cases a federal court will keep a removed case.") (citations omitted). At the time Yamaha removed this case to this Court, the amount in controversy requirement was satisfied. Griep's Complaint alleged damages of $21,538.50 for the breach of contract claim; $1,006.20 for the unjust enrichment claim; $22,211.31 for lost wages resulting from the defamation claim; and an additional amount in excess of $50,000 for general damages in connection with the defamation claim. The subsequent dismissal of Griep's defamation

claim, which reduced the amount recoverable below the jurisdictional minimum, did not destroy this Court's jurisdiction once it had attached. *See St. Paul Mercury*, 303 U.S. at 292–93, 58 S.Ct. 586. Because Griep's total damages alleged in his Complaint exceeded $75,000 at the time this case was removed, the amount in controversy requirement was fulfilled.

## C. Breach of Contract

Griep alleges that Yamaha's termination of his employment was in violation of the terms of his written Employment Agreement (the "Agreement"). *See* Leske Aff., Ex. A. The terms of the Agreement provided that either party could terminate the Agreement for any reason by giving 60 days notice to the other party. *See id.* Additionally, Yamaha could terminate the Agreement in the event that Griep defaulted in any provision of the Agreement and failed to cure such default within 10 days after notification. *See id.* The Agreement did not provide for immediate termination. *See id.* Griep essentially argues that his termination was improper because Yamaha had failed to warn him beforehand that his egregious misconduct at the awards banquet could result in immediate termination. However, such a term of employment is implied by law.

 Fundamental principles of contract law gave Yamaha the legal right to terminate Griep's employment under these outrageous circumstances. All employees owe a duty of loyalty to their employers. *See Brown v. Dupuy*, 4 F.2d 367, 369 (7th Cir.1924) ("Misconduct prejudicial to the master's interests, although not exhibiting moral turpitude, is a good cause for the discharge of a servant. And conduct exhibiting moral turpitude, although productive of no damage to the master's interests, is a good ground for terminating the contract.") (citations omitted). Consistent with the duty of loyalty, employees owe an obligation not to engage in conduct detrimental to their employer's interests. *See*

Restatement (Second) of Agency, § 380 (1958) ("an agent is subject to a duty not to conduct himself with such impropriety that he brings disrepute upon the principal or upon the business in which he is engaged."). Thus, an implied contractual obligation exists on the part of an employee to observe rudimentary principles of appropriate behavior. *See* 9 Williston, Contracts § 1014A, at 59–66 (3d ed.1967); *see also Jarboe Bros. Storage Warehouses, Inc. v. Allied Van Lines, Inc.,* 400 F.2d 743, 745 (4th Cir.1968); *Willis v. Lowery,* 101 Miss. 118, 57 So. 418 (1912) (frequent intoxication is a proper ground for discharge of an employee).

■ In this case, Griep, while representing Yamaha at a public awards banquet, pulled down his pants and indecently exposed himself. The embarrassing nature of such misbehavior might well jeopardize Yamaha's business interests and reputation. Yamaha was justified in terminating Griep's employment upon discovering his flagrant misconduct and Griep's admission that he had engaged in the conduct but it "was not a big deal." Marier Dep., at 22–23. Yamaha cannot be required to tolerate Griep's misbehavior simply because indecent exposure at a public event was not specified as grounds for immediate termination in the Agreement. Thus, under these circumstances Yamaha did not breach the Agreement. As a matter of law, summary judgment is granted on Griep's breach of contract claim.

■ Even assuming *arguendo,* that Yamaha did breach the Agreement, Griep could not recover any damages because the amount he received in unemployment compensation benefits exceeds his maximum possible recovery on his breach of contract claim. Under Minnesota law, the measure of damages for breach of an employment contract is the compensation that an employee who has been wrongfully discharged would have received had the contract been carried out according to its terms. *See Zeller v. Prior Lake Public Schools,* 259 Minn. 487, 108 N.W.2d 602,

606 (1961). Because the terms of the Agreement provided that either party could terminate the Agreement for any reason by giving 60 days notice to the other party, the maximum damages recovery would be 60 days pay, $5,384.60, in lieu of notice. In fact, Griep has already received $8,937 in unemployment compensation benefits. Unemployment compensation benefits received are properly deducted from an award of backpay damages for breach of contract. *See Continental Can Co., Inc. v. State of Minnesota,* 297 N.W.2d 241, 251 (Minn.1980), *abrogated by statute on other grounds, as explained in Cummings v. Koehnen,* 568 N.W.2d 418, 423 n. 6 (Minn.1997) (affirming deduction of amount of unemployment compensation from the amount of wages employee would have earned during the relevant time period); *Dakota County Abstract Co. v. Richardson,* 312 Minn. 353, 252 N.W.2d 124, 127 (1977), *abrogated by statute on other grounds, as explained in Lamb v. Bagley,* 310 N.W.2d 508, 509 n. 1 (Minn.1981) (affirming award of backpay less sums received for unemployment compensation).

## D. Unjust Enrichment and Quantum Meruit

■ Griep's unjust enrichment and quantum merit claims are based on his remodeling work on the Yamaha facility in Coon Rapids, Minnesota. He alleges that his work on the addition to Yamaha's building was extra work for which he is entitled to extra pay. *See* Griep Dep., at 55. However, the existence of the express employment contract between the parties precludes recovery under quasi-contract theories, including unjust enrichment and quantum meruit. *See In re Stevenson Assoc.,* 777 F.2d 415, 421–22 (8th Cir.1985) ("[T]here can be no recovery in quantum meruit where a valid express contract between the parties exists."); *Sharp v. Laubersheimer,* 347 N.W.2d 268, 271 (Minn. 1984) (reversing award of unjust enrichment or quantum meruit theory recovery because an express contract on the same

subject existed); *United States Fire Ins. Co. v. Minnesota State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn.1981) ("[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract."); *Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Canada, Ltd.*, 552 N.W.2d 254, 268 (Minn.Ct.App.1996) (affirming summary judgment on claim for unjust enrichment where valid contract governed parties).

The written Agreement between Griep and Yamaha defeats Griep's quasi-contractual claim for recovery of the value of his work remodeling the Yamaha facility. *See Breza v. Thaldorf,* 276 Minn. 180, 149 N.W.2d 276, 279 (1967) ("It is fundamental that proof of an express contract precludes recovery in quantum meruit."). Moreover, Griep testified that he volunteered to build the shop addition, that Yamaha did not represent that he would be paid an additional amount above his contract wages, and that he never requested payment for the work he performed on the addition. *See* Griep Dep., at 56–59. Because Griep's unjust enrichment and quantum meruit claims fail as a matter of law, summary judgment is appropriate.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

Yamaha's Motion for Summary Judgment [Doc. No. 11] is **GRANTED.**

Griep's Motion for Summary Judgment [Doc. No. 14] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**